**UNITED STATES of America,**
**Plaintiff,**

v.

**VARIOUS GOLD, SILVER**
**AND COINS, et al., in**
**rem, Defendants,**

**and**

**James G. Cole, Inc., James G. Cole, and**
**Sonic Life.Com, LLC, Claimants.**

**Case No. 3:11–cv–01179–SI.**

United States District Court,
D. Oregon,
Portland Division.

Jan. 8, 2013.

Katherine C. Lorenz, Allan M. Garten, United States Attorney's Office, Portland, OR, for Plaintiff.

John Je Markham, II, Markham & Read, Boston, MA, Michael A. Cox, Tigard, OR, for Claimants.

## OPINION AND ORDER

SIMON, District Judge.

In this civil forfeiture action, Claimants petition this Court for the return of $25,000.00 of their seized property (the Defendants, *in rem* ) each month until trial. Alternatively, they seek an evidentiary hearing on the merits of the Government's case. Claimants' Pet. Return Seized Property, Dkt. 57. The Government opposes both requests. Because the Court holds that Claimants do not satisfy the requirements of 18 U.S.C. § 983(f), it denies Claimants' petition for release of the seized property pending trial. The Court also denies Claimants' request for an evidentiary hearing at this time.

## BACKGROUND

Claimant James G. Cole is the owner of Claimant SonicLife.Com LLC, which sells therapeutic exercise machines, and Claimant James G. Cole, Inc., which sells dietary supplements under aliases such as Maxam Labs and Maxam Nutraceutics. Claimants are subjects of an ongoing criminal investigation by the Food and Drug Administration ("FDA") and the Internal Revenue Service ("IRS"). As part of this investigation, the IRS and FDA executed a search warrant on Claimants' business and residential premises on April 7, 2011. During these searches, the IRS seized gold bars and gold and silver coins found in a safe in Cole's house. Claimants allege that these precious metals are valued at $520,000 and that at least some of the seized gold was used in the manufacture of the dietary supplements sold by James G. Cole, Inc.

On September 29, 2011, U.S. Senior District Judge Malcolm Marsh issued a warrant for the arrest and seizure of this gold, silver, and coins, as well as for approximately $1.2 million that the Government believed would be found in four bank accounts belonging to Cole and his businesses. The Government ultimately seized $144,302.68 from those accounts. Also on September 29, 2011, the United States filed a civil forfeiture complaint against the gold, silver, coins and bank accounts, alleging that these Defendants, *in rem*, constitute or derive from proceeds traceable to mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 984. On November 28, 2011, the United States filed a civil forfeiture complaint against two additional assets, a vehicle and some real property in California, based on similar allegations. *See United States v. One 2009 Toyota Tacoma*, Case No. 3:11–cv–01424–SI (D.Or.). Claimants filed claims asserting ownership of Defendants, *in rem*, in both cases.

On the Government's motion, this Court stayed both cases for six months effective July 26, 2012, after finding that continued civil discovery would adversely affect a related criminal investigation. *See* 18 U.S.C. § 981(g)(1). Based on a further motion and supporting materials submitted by the Government *ex parte*, the Court has extended that stay until April 1, 2013. *See* Dkt. 64. In the interim, Claimants sought the return of a portion of the seized property, arguing that their businesses were in jeopardy and that the funds were needed to pay operating expenses. *See* Mot. Return Property, Dkt. 51. Because Claimants claimed a due process violation even though they had not yet sought available statutory relief, the Court denied the motion with leave to file a petition under 18 U.S.C. § 983(f). Opinion & Order, Dkt. 56. Claimants subsequently filed a petition seeking return of the property under § 983(f); they also continue to argue that due process requires that they be given an opportunity to be heard on the merits of the Government's case. *See* Claimants' Pet. Return Seized Property, Dkt. 57.

## LEGAL STANDARD

■ Through the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Congress added a hardship provision to the civil forfeiture statute that allows claimants to seek immediate release of seized property in certain circumstances. Establishing hardship under § 983(f) does not require consideration of the legality of the seizure or the merits of the underlying civil forfeiture action; "[t]he issue is solely whether the equities are such that the property should remain in the custody of the claimant rather than the Government pending trial." Stefan D. Cassella, *Asset Forfei-*

*ture Law in the United States* § 3–9 at 142–43 (2d ed. 2013).

Under § 983(f), a claimant is entitled to immediate release of seized property if the following five requirements are met:

(A) the claimant has a possessory interest in the property;

(B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;

(C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

(D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceedings; and

(E) none of the conditions set forth in paragraph (8) applies.

*Id.* § 983(f)(1). Paragraph (8) excludes from § 983(f) relief seized property that "is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized." *Id.* § 983(f)(8)(A). Although paragraph (8) excludes additional categories of seized property, neither party argues that those exceptions are relevant to the present motion.

To seek release of property under § 983(f), the claimant "*must* request pos-

session of the property from the appropriate official" in a demand that sets forth how the five § 983(f)(1) requirements are met. 18 U.S.C. § 983(f)(2) (emphasis added). Only if the property is not released by the appropriate official within fifteen days may the claimant file a petition for return of the property in the district court in which the forfeiture complaint was filed. *Id.* § 983(f)(3)(A). That petition must set forth "the steps the claimant has taken to secure the release of the property from the appropriate official" as well as the basis on which the § 983(f)(1) requirements are met. *Id.* § 983(f)(3)(B).[1]

## DISCUSSION

### I. Petition for Return of Property under 18 U.S.C. § 983(f)

■ To succeed on their petition under § 983(f), Claimants must establish that all five requirements of § 983(f)(1) have been met. The Government does not dispute that "the claimant has a possessory interest in the property" (§ 983(f)(1)(A)). Claimants have also made a plausible showing that the "the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business" (§ 983(f)(1)(C)). The Government seized the bank accounts of Claimants' businesses some fifteen months ago, and Claimants have represented that their businesses are in dire financial circumstances. This is precisely the sort of hardship contemplated by § 983(f)(1)(C). Nonetheless, the Court must deny the petition because it finds that the three remaining § 983(f)(1) requirements have not been adequately established.

---

1. The § 983(f)(2) request appears to be a prerequisite to filing a petition before this Court under § 983(f)(3). It is not clear that Claim-

ants have complied with this requirement, but the Government has not challenged Claimants' petition on this ground.

First, Claimants acknowledge that "[t]here is obviously some risk that the money sought each month, $25,000.00[,] may not pull Maxam Labs out of its financial tailspin," with the result that the property would be irretrievably lost. *Id.* at 7. Indeed, based on Claimants' representations that they intend to use the funds to pay salaries, rent, utilities, and other operating expenses, the Court finds that the "risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant" is nearly certain. 18 U.S.C. § 983(f)(1)(D); *see also United States v. 8 Gilcrease Lane,* 587 F.Supp.2d 133, 147 (D.D.C.2008) ("[T]he Court is not authorized to order the release of funds that are guaranteed to dissipate upon their release with no guarantee of an equivalent replacement."); *United States v. One 2003 Mercedes Benz 8500 AMG,* Civil No. 05–73865, 2008 WL 2966263, at *2 (E.D.Mich. July 24, 2008) (denying § 983(f) relief because claimant sought release of currency to pay bills and meet financial obligations, which indicated that the property "certainly would not be available, in its entirety, for trial"); *United States v. Huntington National Bank Account * * * *3558,* No. 2:07–cv–0080, 2007 WL 2713832, at *1 (S.D.Ohio Sept. 14, 2007) (denying § 983(f) relief where claimant sought release of funds to pay for legal counsel and expert witnesses because "it is almost assured that these funds would, in fact, not be available for trial"); *United States v. $1,231,349.68 in Funds,* 227 F.Supp.2d 125 (D.D.C.2002) (denying release of currency under § 983(f) where claimant intended to use the funds to start a business because the funds would then not be available for trial).

■ The Court acknowledges that Claimants allege a substantial hardship from the continued seizure of their business assets. It finds under § 983(f)(1)(D), however, that the high risk of dissipation outweighs Claimants' asserted hardship.

In making this finding, the Court notes § 983(f)'s "great emphasis on ensuring the preservation of any released property pending final disposition of forfeiture proceedings." *United States v. Undetermined Amount of U.S. Currency,* 376 F.3d 260, 265 (4th Cir.2004). This concern is embodied not only in the requirements of § 983(f)(1)(B) and § 983(f)(1)(D), but also in § 983(f)(7), which empowers the Court and the Government, if property is released back to a claimant, to take additional measures to ensure the preservation of the property's value pending trial. Thus, where dissipation is nearly certain, the balance under § 983(f)(1)(D) tips sharply against the claimant. *Cf. 8 Gilcrease Lane,* 587 F.Supp.2d at 148 (acknowledging "the obvious hardships endured by the employees of [the business]," but declining to grant relief because, "[q]uite simply, the money will be 'lost' forever").

Second, while Cole and his businesses have long-standing ties to their local community, § 983(f)(1)(B) requires "sufficient ties to the community *to provide assurance that* the property will be available at the time of trial." 18 U.S.C. § 983(f)(1)(B) (emphasis added). Claimants represent that their ties to the community "provide *some assurance* that *equivalent property* will be available at the time of trial." Claimants' Mem. Supp. Pet. Return Seized Property, Dkt. 58, at 6. That showing, which reflects Claimants' intention to spend any funds returned to them, does not satisfy § 983(f)(1)(B).

Third, Claimants cannot satisfy § 983(f)(1)(E) because one of the conditions of paragraph (8) applies. Claimants seek the release of monetary funds and precious metals, which Claimants argue could be readily liquidated. Section 983(f)(8)(A), however, prohibits the release of "contraband, currency, or other monetary instrument, or electronic funds" un-

less they "constitute[ ] the assets of a legitimate business which has been seized." Courts have consistently interpreted "the assets of a legitimate business which has been seized" as applying only when the Government has seized an entire business, not just its assets. *United States v. Approximately up to $15,034,6633 in Funds Contained in Ten Bank Accounts,* 844 F.Supp.2d 1216, 1217–18 (D.Utah 2011); *In re: Seizure Warrants,* 593 F.Supp.2d 892, 893 (N.D.W.Va.2008); *8 Gilcrease Lane,* 587 F.Supp.2d at 140; *Kaloti Wholesale, Inc. v. United States,* 525 F.Supp.2d 1067, 1070 n. 2 (E.D.Wisc.2007). As the Southern District of Ohio has pointed out, "*a legitimate business* is singular, *assets* is plural, and *has been seized* is singular; therefore, *has been seized* grammatically must refer to *a legitimate business,* not *assets.*" *United States v. Contents of Account No. 4000393243,* No. C–1–01–729, 2010 WL 3398142, at *1 (S.D.Ohio Jan. 2, 2010).

Claimants do not challenge this interpretation of § 983(f)(8)(A); instead, they argue that the Government has constructively seized their businesses. *See* Claimants' Mem. Supp. Pet. Return Seized Property at 7–8. The Court does not agree. The Government did not seek to take control of any of Cole's businesses. It seized documents to aid its investigations, products it alleges are contraband, and funds it alleges are proceeds of criminal activities. It did not seize *all* of the businesses' documents, products, or funds, however, as demonstrated by the businesses' continued—albeit limited—operations. *Cf. In re: Seizure Warrants,* 593 F.Supp.2d at 894 (declining to find constructive seizure of businesses where businesses had continued to operate and generate a profit for six months or more). Thus the Court finds that the Government seized the businesses' bank accounts, not the businesses themselves.

Claimants have therefore only established two of the five requirements enumerated in § 983(f)(1). Indeed, Claimants acknowledge in their memorandum that "certain of [§ 983(f)'s] provisions ... would normally not favor the order sought herein." Claimants' Mem. Supp. Pet. Return Seized Property, Dkt. 58, at 9. Because § 983(f) entitles a claimant to the immediate release of seized property only if all five of the § 983(f)(1) requirements are met, the Court denies Claimants' petition for the return of property pending trial.

## II. Request for Evidentiary Hearing

 In the alternative, Claimants request an evidentiary hearing to test the merits of the Government's forfeiture case. Procedural due process requires notice and an opportunity to be heard, provided at a time and in a manner so as to be meaningful. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Claimants have received notice; they argue only that they have been denied an opportunity to be heard in time to avoid an irreparable deprivation of property.

As the Court has previously noted, it takes seriously Claimants' due process concerns. *See* Opinion & Order, Dkt. 48, at 5. The nine-month stay the Court has granted in this case, however, is supported by detailed and concrete showings by the Government of the need for confidentiality in a related criminal investigation. The delay has also not been so lengthy as to impinge on Claimants' due process rights. When the current stay is lifted on April 1, 2013, the Court will set a trial schedule. If Claimants conclude that the trial schedule is insufficient to protect their due process right to be heard in a timely manner, they may move for an interim probable cause hearing at that time.

## CONCLUSION

For the foregoing reasons, the Court DENIES Claimants' Petition for Return of Seized Property Made Pursuant to 18 U.S.C. § 983 (Dkt. 57).